# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
## COURT FILE NO.: 20-cv-1858

| | |
|---|---|
| Inchan Hwang,<br><br>　　　　　Plaintiff,<br>v.<br><br>Hyundai Capital America Inc.,<br><br>　　　　　Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This action arises out of Defendant Hyundai Capital America Inc. ("Defendant")'s violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq.* ("FCRA"), breach of a settlement agreement and violation of Minnesota state common law.

## JURISDICTION

2. Jurisdiction of this Court is proper pursuant to 15 U.S.C. § 1681 and 28 U.S.C. §§ 1331 and 1367 for pendent state law claims.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the conduct at issue occurred in this District and Defendant transacts business in this District.

## PARTIES

4.     Plaintiff, Inchan Hwang (hereinafter "Plaintiff"), is a natural person who resides in the City of Independence, County of Hennepin, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5.     Defendant, Hyundai Capital America, Inc. (hereinafter "Defendant HCA" or "HCA"), is an auto finance company, wholly owned by Hyundai Motor Company, a multinational automotive manufacturer; is a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-2(b); is incorporated under the laws of the State of California; is licensed to do business in the State of Minnesota and has a registered agent for service of National Registered Agents, Inc., 1010 Dale St. N., St. Paul, Minnesota  55117; and its principal place of business is located at 3161 Michelson Drive, Suite 1900, Irvine, California 92612.

## PURPOSE OF THE FAIR CREDIT REPORTING ACT

6.     Consumer credit plays a major role in the lives of American consumers entering into the American marketplace and the economic system in general.  Fair and accurate credit reporting acts as a gatekeeper to credit purchases, employment and income, basic commercial services, insurance coverage, housing rentals, and a broad range of other transactions.   Robert J. Hobbs & Stephen Gardner, The Practice of Consumer Law 39-40 (2nd ed. 2006).

7.     Congress investigated and determined that the banking system is dependent upon fair and accurate reporting, that inaccurate credit reports directly impair the efficiency of the banking system, and that unfair credit reporting methods

undermine the public confidence, which is essential to the continued functioning of the banking system.  15 U.S.C. § 1681(a)(1).

8.     The FCRA was created to "ensure fair and accurate credit reporting, promote efficiency, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007).

9.     The FCRA was proposed in 1968 as an amendment to the original Truth in Lending Act.  Senator Proxmire (D-WI) announced his intention to create legislation addressing the growing frequency of cases in which a consumer "is unjustly denied because of *faults or incomplete information in a credit report*," and entered an initial draft of what would eventually become the FCRA into the Congressional Record. Anthony Rodriguez et al., Fair Credit Reporting 8 (5th ed. 2002) (citing 114 Cong. Rec. 24904 (Aug. 2, 1968)) (emphasis added).

10.    Senator Proxmire listed five types of abuses requiring Congressional response, including biased or one-sided information and incomplete information.  Anthony Rodriguez et al., Fair Credit reporting 8 (5th ed. 2002) (citing 115 Cong. Rec. 2411 (Jan. 31, 1969)).

11.    Congress considered inaccurate and misleading information to be the most serious problem.  Anthony Rodriguez et al., Fair Credit Reporting 10 (5th ed. 2002).

12.    The FCRA applies to situations in which information relevant to a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" is collected.  Anthony Rodriguez et al., Fair Credit Reporting 5 (5th ed. 2002) (citing 15 U.S.C. § 1681a(d)).

13.    An inaccurate or misleading credit report can not only significantly and unfairly lower a consumer's credit worthiness, but can also prevent consumers from full access to the American marketplace and negatively impact a consumer's living standard and general reputation on the whole if a consumer's character and mode of living is not accurately portrayed.  Congress enacted the FCRA to prevent this arbitrary and iniquitous result.

14.    Furthermore, in 1996, Congress, in an effort to increase the "accuracy and integrity" of information supplied to credit reporting agencies, added 15 U.S.C. § 1681s-2 to the FCRA by passing the Consumer Credit Reform Act.  The provision, "[r]esponsibilities of furnishers of information to consumer reporting agencies," subjected data furnishers, who were not previously covered by the FCRA, to requirements related to accuracy and the handling of consumer disputes.  These provisions were originally scheduled to sunset in 2003, but were considered important enough to Congress to be made permanent in the Fair and Accurate Credit Transactions Act of 2003.  Federal Trade Commission Staff: 40 Years of Experience with the Fair Credit Reporting Act, pp. 1, 2, 92.  Retrieved from the FTC website: http://www.ftc.gov/os/2011/07/110720fcrareport.pdf.

15.    The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes.  *See* 15 U.S.C. § 1681i(a)(5)(D).

16.    Consumer reporting agencies Equifax, Experian, Trans Union, and Innovis have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance.  e-OSCAR allows data

furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

17. That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II." It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

18. Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

19. Metro II codes are used on an industry wide form known within the credit industry as an Automated Credit Dispute Verification ("ACDV") electronic form.

20. The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

21. These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

## FACTUAL ALLEGATIONS

22. Sometime in January 2020, Plaintiff filed an action against the current Defendant in the Second Judicial Conciliation Court, 62-CO-20-447.

23.   The state court action involved Plaintiff's lease agreement with Defendant with account number 181394****.

24.   Plaintiff and Defendant agreed to settle their disputes, and each signed a Settlement and Mutual Release Agreement, dated March 16, 2020.

25.   Plaintiff and Defendant agreed that all amounts due by Plaintiff to Defendant under the lease had always been paid on time and current, that no additional amount was due by Plaintiff and specifically that all claims for money allegedly owed by Plaintiff to Defendant under the lease were released and resolved.

26.   Included in the Settlement and Mutual Release Agreement,  Defendant agreed to submit a request to remove any derogatory credit reporting from Plaintiff's credit report relating to account number 181394****, including any credit remarks such as "charged off" and "late."

27.   Despite Defendant's executing of the Settlement Agreement and Release Defendant continued to derogatorily report the account to Equifax Information Services LLC ("Equifax"), in breach of the settlement agreement.

28.   Sometime in or about June 2020, Plaintiff reviewed his credit report and was horrified to see that Defendant had inaccurately reported the alleged account #181394**** in a derogatory manner, despite the matter being settled in March 2020.

29.   Plaintiff immediately disputed the Defendant's tradeline on his credit report on June 25, 2020 to Equifax.

30.   Equifax notified Defendant of Plaintiff's dispute via electronic communication (ACDV) through the E-OSCAR platform.

31.   Defendant failed to perform a reasonable investigation and verified the Plaintiff's account / tradeline reporting as the account being charged off, in violation of 15 U.S.C. § 1681s-2(b) on about August 12, 2020.

32.   Plaintiff was worried how this would affect his current financial situation and he began to feel extremely anxious.

33.   Defendant's failure to update the credit reporting to adhere with the settlement agreement caused Plaintiff to suffer actual damages in the form of frustration, loss of sleep, headaches, and despair.

## TRIAL BY JURY

34.   Plaintiff is entitled to and hereby demands a trial by jury.  U.S. Const. amend. VII; Fed. R. Civ. P. 38.

## CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT – 15 U.S.C. §1681 et. seq.

35.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

36.   Defendant willfully and/or negligently violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information,

failing to review all relevant information available to it and failing to update the inaccurate trade line and/or report it as disputed.

37. As a result of Defendant's violations of the FCRA, Plaintiff has suffered actual damages including detriment to his credit rating, emotional distress, embarrassment, sleeplessness, anxiety, and frustration in an amount to be determined at trial.

38. Defendant's conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

39. Defendant's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n of the Act.

40. Alternatively, Defendant's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

41. Plaintiff is entitled to recover actual damages, statutory and punitive damages, and costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II.

## BREACH OF SETTLEMENT AGREEMENT

42. Plaintiff incorporates by reference the preceding paragraphs as though fully stated herein.

43. Plaintiff and Defendant signed a settlement agreement in the matter of *Hwang v. Hyundai*, 62-CO-20-447, and the case was dismissed.

44.   Plaintiff and Defendant agreed in the settlement agreement that all amounts due by Plaintiff to Defendant under the lease had always been paid on time and current, that no additional amount was due by Plaintiff and specifically that all claims for money allegedly owed by Plaintiff to Defendant under the lease were released and resolved.

45.   Further Defendant agreed to remove all negative or derogatory credit reporting for account 181394****, including any notation of a "charge off."

46.   Despite Defendant's executing of the Settlement and Mutual Release Agreement Defendant continued to report account 181394**** negatively, in breach of the settlement agreement.

47.   Plaintiff is entitled to recover actual damages for breach of the settlement agreement, plus attorney's fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant for:

- an award of actual and statutory damages against Defendant for its violations of the FCRA pursuant to 15 U.S.C. §§ 1681n and 1681o;
- an award of punitive damages against Defendant for its willful noncompliance with the FCRA pursuant to 15 U.S.C. § 1681n;
- awarding actual damages for breach of the settlement agreement, plus attorney's fees and costs against Defendant; and
- for such other and further relief as the Court may deem just and appropriate.

Dated this 27th day of August 2020.

Respectfully submitted,

By: s/Thomas J. Lyons Jr._____
Thomas J. Lyons, Jr., Esq.
Attorney I.D. #249646
**CONSUMER JUSTICE CENTER, P.A.**
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
Facsimile: (651) 704-0907
tommy@consumerjusticecenter.com

***ATTORNEY FOR PLAINTIFF***

## **VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF**

I, Inchan Hwang, declare under penalty of perjury, as provided for by the laws of

the United States, 28 U.S.C. § 1746, that the following statements are true and correct:

1. I am the Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all the facts contained in it are true, to the best of my knowledge, information, and belief, formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

Dated this 27th day of August 2020.

s/Inchan Hwang
Inchan Hwang

11